CENTER FOR DISABILITY ACCESS
Ray Ballister Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Dennis Price, Esq., SBN 279082
Isabel Rose Masanque, Esq., SBN 292673
8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
IsabelM@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Brian Whitaker**<br><br>        Plaintiff,<br><br>    v.<br><br>**Farm-To-Table Eats, Inc**., a California Corporation; and Does 1-10,<br><br>        Defendants. | **Case:** 2:20-cv-01899-AB-AS<br><br>**Plaintiff's Opposition to Defendant's Motion for Summary Judgment**<br><br>Date:    July 23, 2021<br>Time:    10:00 a.m.<br>Ctrm:    7B<br><br>Hon. Judge Andre Birotte Jr. |

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................. i

MEMORANDUM IN OPPOSITION ........................................... 1

I.    PRELIMINARY STATEMENT ...................................... 1

II.   LEGAL STANDARD ...................................................... 1

III.  RELEVANT FACTS.......................................................... 2

IV.  PLAINTIFF PERSONALLY ENCOUNTERED BARRIERS
      AT THE RESTAURANT .........**Error! Bookmark not defined.**

V.   DEFENDANTS DO NOT MEET THE "FORMIDABLE"
      BURDEN OF DEMONSTRATING MOOTNESS. ..................... 7

VI.  PLAINTIFF SEEKS WHEELCAHIR ACCESSIBLE
      TABLES IN HIS COMPLAINT...............**Error! Bookmark not
      defined.**

VII. ...........The Barriers Are and Were Readily Achievable to Remove
      **Error! Bookmark not defined.**

VIII. THE LACK OF COMPLIANT FACILITIES IS UNLAWFUL
      UNDER CALIFORNIA LAW..**Error! Bookmark not defined.**

X.    REMEDIES .................................................................11

  A.  Plaintiff Has Standing to Seek an Injunction Requiring Defendant
  to Provide an Accessible Outdoor Dining Table ................................11

  B.  Plaintiff is Entitled to a Statutory Penalty Under the Unruh Civil
  Rights Act................................................................................15

    1.  *Plaintiff Personally Encountered the Inaccessible Dining Tables*....15

i

2. *Plaintiff Was Deterred from Accessing the Restaurant Because of the Violation* ............................................................................... 16

3. *Plaintiff is Entitled to a Separate Statutory Penalty Against Each Defendant* ........................................**Error! Bookmark not defined.**

XI.   CONCLUSION ............................................................................... 18

Opposition to Defense MSJ                    **Case No**. 2:20-CV-01899-AB-AS

1
2
3
4

# TABLE OF AUTHORITIES

5
**Cases**

6
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)........................ 1

7
*City of Mesquite v. Aladdin's Castle, Inc.*,

8
    455 U.S. 283 (1982) .................................................................. 4

9
*Colorado Cross Disability Coalition v. Hermanson Family Ltd. Partnership*

10
    *I*, 264 F.3d 999 (10th Cir. 2001) .......................................... 11

11
*Cullen v. Netflix, Inc.*,

12
    880 F.Supp.2d 1017 (N.D. Cal. 2012) ................................ 13

13
*D'Lil v. Best Western Encina Lodge & Suites*,

14
    538 F.3d 1031 (9th Cir. 2008) ............................................ 16

15
*Erickson v. Pardus*,

16
    551 U.S. 89 (2007) .............................................................. 10

17
*Grove v. De La Cruz*,

18
    407 F. Supp. 2d 1126 (C.D. Cal. 2005) ................................ 8

19
*Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013) .16

20
*Roberts v. Royal Atlantic Corp*, 542 F.3d 363, 373 (2nd Cir. 2008). ......11

21
*Scott v. Harris*, 550 U.S. 372, 378, (2007) .................................................. 1

22
*Swierkiewicz v. Sorema N.A.*,

23
    534 U.S. 506 (2002) ............................................................ 10

24
*Tandy v. City of Wichita*,

25
    380 F.3d 1277 (10th Cir. 2004) ............................................ 5

26
*United States v. Concentrated Phosphate Export Ass'n*,

27
    393 U.S. 199 (1968) .............................................................. 4

28

iii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

Defendant Farm-To-Table Eats, Inc. ("Defendant") moves for summary judgment on Plaintiff's ADA and Unruh causes of action on the grounds that the barriers alleged in Plaintiff's First Amended Complaint are moot.  However, it is well established that the voluntary cessation by a defendant of discriminatory conduct is insufficient to establish mootness. There is no dispute that Defendant failed to provide indoor and outdoor accessible dining surfaces at the Restaurant on the date of Mr. Whitaker's visit in violation of the ADA, and in turn, in violation of Unruh. Therefore, Plaintiff respectfully requests this Court deny Defendant's motion and *sua sponte* grant summary judgment in Plaintiff's favor on both causes of action, instead.

## II.   LEGAL STANDARD

Summary judgment is appropriate when, after adequate discovery, the evidence demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[1] A disputed fact is material where its resolution might affect the outcome of the suit under the governing law.[2] An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party.[3] A court may consider the pleadings, discovery and disclosure materials, and any affidavits on file.[4] Where the moving party's version of

---

[1] Fed.R.Civ.P. 56

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)

[3] *Id.*

[4] Fed.R.Civ.P. 56(c)(2).

Opposition to Defense MSJ                    **Case No**. 2:20-CV-01899-AB-AS

1   events differs from the non-moving party's version, a court must view the
2   facts and draw reasonable inferences in the light most favorable to the
3   non-moving party.[5]

4

5                        **III.   RELEVANT FACTS**

6          Plaintiff Brian Whitaker suffers from a C-4 spinal cord injury which
7   substantially limits his ability to walk on his own. He uses wheelchair for
8   his mobility.[6] The Rabano (Restaurant) is located at or about 2516 Pacific
9   Coast Highway, Hermosa Beach, California.[7]  The Restaurant is a facility
10  open to the public, a place of public accommodation, and a business
11  establishment.[8] Defendant Farm-To-Table Eats, Inc. is the owner of the
12  Restaurant, currently, and was so in January 2020.[9]

13         On January 29, 2020, Mr. Whitaker visited the Restaurant to eat
14  and to assess it for compliance with access laws.[10] On the date of his visit,
15  Mr. Whitaker found that there were dining tables available outside the
16  Restaurant for customers to use.[11] However, each of the tables were
17  pedestal style tables (as opposed to four legs at each corner), where the
18  table-top, dining surface is supported by a central pole that has four
19  extending feet. Because of these feet, a wheelchair user's feet (or
20  wheelchair footrest) cannot pull under the table for more than just a few
21  inches, precluding wheelchair users like Mr. Whitaker from pulling up and

22

23

_____

24  [5] *Scott v. Harris*, 550 U.S. 372, 378, (2007).
25  [6] Pl. SUF #1.
    [7] Pl. SUF #2.
26  [8] Pl. SUF #3.
    [9] Pl. SUF #4.
27  [10] Pl. SUF #5.
28  [11] Pl. SUF #6.

2

under the table and using it to eat.[12] Mr. Whitaker contemplated whether he could still use one of the outdoor dining tables. But the thought of trying to do so was discomforting for him because Mr. Whitaker did not want to embarrass himself trying to use the table only to find that he would not fit. Mr. Whitaker decided to leave the Restaurant instead.[13]

On February 24, 2020, plaintiff's investigator, Evens Louis went to the Restaurant and conducted an investigation.[14] Mr. Louis counted 4 dining tables outside and 5 dining tables outside the Restaurant available for customers to use. He took a number of measurements of the toe clearance and knee clearance of each of the dining tables. Mr. Louis measured the toe clearance of the dining tables to be approximately 2-3 inches. He measured the knee clearance of the dining tables to be 6-10 inches.[15] On June 10, 2021 Mr. Louis returned to the Restaurant and conducted a follow-up investigation.[16] Mr. Louis found that the dining tables outside the Restaurant had been removed.[17] Inside the Restaurant, he found that there was now one table with no knee and toe obstructions.[18]

---

[12] Pl. SUF #7.
[13] Pl. SUF #8.
[14] Pl. SUF #9.
[15] Pl. SUF #10.
[16] Pl. SUF #11.
[17] Pl. SUF #12.
[18] Pl. SUF #13.

3

1
2
3
4

### IV. DEFENDANT VIOLATED THE AMERICANS WITH DISABILITIES ACT BY FAILING TO PROVIDE ACCESSIBLE DINING SURFACES ON THE DATE OF PLAINTIFF'S VISIT

5 The lack of accessible dining tables constitutes a barrier. Where
6 dining surfaces are provided for the consumption of food or drink, at least
7 5 percent of the seating spaces and standing spaces at the dining surfaces
8 must be accessible.[19] Dining surfaces are required to provide toe clearance
9 which shall extend 25 inches maximum and 17 inches minimum under the
10 element. Toe clearance shall be 30 inches wide minimum.[20]

11 Here, when Mr. Whitaker visited the Restaurant in January 2020,
12 the dining surfaces at the Restaurant did not conform to these standards.
13 Because the table was supported by a central pole with four extending feet,
14 it did not provide Mr. Whitaker with the necessary toe clearance needed to
15 pull under the table in his wheelchair.[21] During his subsequent
16 investigation, Mr. Louis measured the indoor and outdoor dining tables
17 and confirmed that they only provided  2-3 inches of toe clearance and
18 only 6-10 inches of knee clearance.[22] Because the dining tables did not
19 comply with ADA standards, Defendant violated the ADA by failing to
20 provide accessible dining surfaces on the date of Mr. Whitaker's visit.

21
22
23

### A. Defendant's Failure to Provide a Dining Surface that Complied with ADA Standards Constituted a Denial of Full and Equal Access

24 The defense further argues that Mr. Whitaker was not denied full
25 and equal access to the Restaurant because Mr. Whitaker could have still

26 ───────────────
[19] 36 C.F.R., Pt. 1191, Appendix B (Scoping 226.1).
27 [20] 36 C.F.R., Pt. 1191, Appendix D (Building Blocks: 902.1, 902.2).
[21] Pl. SUF #7.
28 [22] Pl. SUF #10.

Opposition to Defense MSJ          **Case No**. 2:20-CV-01899-AB-AS

used the non-compliant dining tables. (See Def. SUF #7). Specifically, the defense speculates that Mr. Whitaker may have still been able to able to fit under the table given the possible dimensions of his wheelchair. However, whether Mr. Whitaker could have found a way to use the non-compliant table is irrelevant and not a defense.

The standard is not whether an illegal barrier *prohibits* access. "The ADA guarantees the disabled more than mere access to public facilities; it guarantees them 'full and equal enjoyment.'"[23] It is about equality of access. "Under the ADA, when a disabled person encounters an accessibility barrier violating its provisions, it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way."[24] Persons with disabilities are entitled to a certain quality of access.   The ADA "does not limit its antidiscrimination mandate to barriers that completely prohibit access."[25] Thus, an argument that a certain violation did not preclude access misapprehends the law. Ultimate access is not a defense under the ADA."[26] The ADA concerns itself with "equality of access."[27]

The Ninth Circuit has held that the phrase "full and equal" is a term of art, having specific reference to the Americans with Disabilities Act Accessibility Guidelines ("ADAAG").[28] The *Chapman* court held that "the ADAAG establishes the technical standards required for 'full and equal enjoyment'" and that "if a barrier violating these standards relates to a

---

[23] *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012).

[24] *Chapman v. Pier 1 Imports (U.S.) Inc.* (2011) 631 F.3d 939, 947.

[25] *Doran v. 7-Eleven, Inc.* (2008) 24 F.3d 1034,1041 at fn. 4.

[26] *Wilson v. Haria & Gogri Corp.*, 479 F. Supp. 2d 1127, 1134 (E.D. Cal. 2007).

[27] *Id.*

[28] *Chapman,* 631 F.3d at 947.

5

1  plaintiff's disability, it **will** impair the plaintiff's full and equal access" and

2  "constitutes 'discrimination' under the ADA."[29]

3       For the uneducated and unaware, it can seem absurd that a federal

4  civil rights law can be violated by merely failing to ensure that certain

5  physical elements strictly conform to a code. Those voices, like defense

6  counsel in this case, try to avoid the impact of the law by proposing a

7  different standard, i.e., "was the plaintiff *actually* precluded or physically

8  *barred* from access?" But that is not the law. The law does, in fact, deal

9  something as minute as small physical measurements and the difficulties

10 created by non-conformance. "The issues involved in ADA accessibility

11 cases are, to be frank, mind-numbingly boring; the ADA Accessibility

12 Guidelines regulate design elements down to the minutest detail. But,

13 although the ADA's requirements are highly technical, they are essential

14 to serve a core function of all civil rights laws: ensuring that the arenas of

15 civic life are open to everyone."[30]

16     A business simply does not have the luxury of claiming that the

17 physical facilities were *good enough* or that a plaintiff could have figured

18 out how to get access. "We have held that obedience to the spirit of the

19 ADA does not excuse noncompliance with the ADAAG's requirements.

20 The ADAAG's requirements are as precise as they are thorough, and the

21 difference between compliance and noncompliance with the standard of

22 full and equal enjoyment established by the ADA is often a matter of

23 inches."[31] Here, there is no dispute that there were no indoor or outdoor

24

25

_____

26 [29] *Id.* (emphasis added).

27 [30] *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 732, fn. 5 (9th Cir. 2007)
   (internal quotation marks omitted for readability).

28 [31] *Chapman*, 631 F.3d at 946 (internal citations omitted).

6

accessible tables at the Restaurant on the date of Mr. Whitaker's visit, therefore denying Mr. Whitaker full and equal access to the Restaurant.

**B.    Defendant's Violation of the ADA was also a Violation of the Unruh Civil Rights Act**

The Unruh Civil Rights Act provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section."[32] "A violation of the ADA is, by statutory definition, a violation of both the Unruh Act and the DPA."[33] "Because the Unruh Act is coextensive with the ADA and allows for monetary damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims."[34] Because Defendant violated the ADA by failing to provide accessible dining surfaces, Defendant also violated Plaintiff's rights under the Unruh Civil Rights Act.

## V.   DEFENDANT DOES NOT MEET THE "FORMIDABLE" BURDEN OF DEMONSTRATING MOOTNESS.

"The test for mootness...is a stringent one. Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant free to return to his old ways."[35] Moreover, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."[36] A claimed remedy "might become moot if subsequent events make it absolutely clear that the

---

[32] Civ. Code § 51 (f).
[33] *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal. 2012).
[34] *Molski*, 481 F.3d at 731.
[35] *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203-04 (1968) (citation and internal punctuation omitted).
[36] *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

7

allegedly wrongful behavior could not reasonably be expected to recur."[37] The party asserting mootness has "the heavy burden of persuading the Court that the challenged conduct cannot be reasonably expected to recur."[38] One court, presiding over an ADA case, summarized the standard as follows:

> The burden of establishing mootness by voluntary compliance is a heavy one. A request for prospective relief can be mooted by a defendant's voluntary compliance if the defendant meets the "formidable burden" of demonstrating that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Such a burden will typically be met only by changes that are permanent in nature and that foreclose a reasonable chance of recurrence of the challenged conduct.
>
> > [*Tandy v. City of Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004) (internal cites and quotes omitted for readability).]

Here, Mr. Whitaker explains that on the date that he went to the Restaurant, there were outdoor dining tables available for customers to use, but no accessible tables.[39] After this lawsuit was filed, the Restaurant removed the outside dining tables. However, the restaurant can easily bring tables back to the outside dining area at any time. Therefore, the supposed "fixes" to the problem experienced by Mr. Whitaker are policy

---

[37] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170, 120 S. Ct. 693, 698, 145 L. Ed. 2d 610 (2000).
[38] *Friends of the Earth,* 528 U.S. at 170.
[39] Pl. SUF #5-8.

8

and practice based rather than permanent, physical changes. The decision to not put dining tables outside could be ignored or changed by the Restaurant in the future.

Courts have not been hesitant to find that ADA defendants cannot meet the formidable burden of demonstrating mootness when they undertake post-litigation modifications that are not structural in nature. For example, in *Langer v. Kaimana*, the defendants had a practice of placing "merchandise and a dumpster in the access aisle adjacent to the space" making the accessible space unusable.[40] The defendants brought a motion to dismiss, arguing that the violations were fixed, rendering the case moot. The defendants submitted a declaration, claiming that: "they have implemented policies and procedures that ensure nothing obstructs the access aisle adjacent to the handicapped parking space, which is otherwise ADA complaint."[41] The court denied the motion, citing several cases for authority, and held: "Notwithstanding [defendant's] declaration, there is no evidence that *guarantees* Defendants will follow through on this recently-implemented policy of keeping the access aisles unobstructed. Unlike ADA cases involving post-lawsuit structural alterations, which would require defendants to make physical alterations to a non-ADA compliant property, the policy at issue here simply requires Defendants' inaction."[42]

Additionally, "[There is] presumption" of future injury when cessation occurs in response to suit; "[V]oluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not

---

[40] *Langer v. Kaimana LLC*, 2016 WL 7029151, at *1 (C.D. Cal. 2016).
[41] *Langer,* 2016 WL 7029151, at *2.
[42] *Langer,* 2016 WL 7029151, at *2.

9

changed course simply to deprive the court of jurisdiction."[43] While Defendant chose to remove the dining tables outside the Restaurant at this time, there is nothing stopping Defendant from putting the tables back outside again once this case has concluded. Removing tables and chairs does not moot plaintiff's claim nor relieve Defendant of its responsibility to provide accessible dining surfaces. The failure to provide and maintain simple accessible features, such as dining surfaces, should already have been accomplished. But since it has already been proven that Defendant failed to do so in the past, this Court should enjoin the Defendant to provide accessible outdoor dining surfaces in the future, should Defendant choose to offer dining surfaces again outdoors.

It is uncontestable that failure to provide accessible dining tables is one of those frequently occurring, easily recurring violations because dining tables can be easily moved, or even removed and put back again. And, where a defendant has demonstrated a past apathy toward its legal obligations to provide full and equal access to persons with disabilities, a "voluntary" fix after being hauled into court does not meet the "formidable burden of demonstrating that it is ***absolutely clear*** the alleged wrongful behavior could not reasonably be expected to recur."[44]

Under such circumstances, courts have been advised to be skeptical. "It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is a probability of resumption."[45] As the Ninth Circuit has noted: "Such actions in the face of litigation are

---

[43] *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203-04 (1968) (citation and internal punctuation omitted).

[44] *Id*. at 860, quoting, Friends of the Earth, Inc., 528 U.S. at 190. (emphasis added).

[45] *Santiago v. Miles*, 774 F.Supp. 775, 793 (W.D.N.Y. 1991).

10

equivocal in purpose, motive, and permanence."[46] The Supreme Court has held that there is actually a "presumption" of future injury when cessation occurs in response to suit.[47]

Merely fixing a problem after being sued does not render the claims moot. "The question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can by any effective relief. Mere voluntary cessation of allegedly illegal conduct does not moot a case; it if did, the courts would be compelled to leave the defendant free to return to his old ways."[48]

Here, Defendants cannot meet the formidable burden of demonstrating that the violation could not possibly recur.

## X. REMEDIES

Plaintiff seeks an injunction under the ADA requiring the Defendant to provide an accessible outdoor dining table. Plaintiff also seeks a statutory penalty of $4,000.

### A. Plaintiff Has Standing to Seek an Injunction Requiring Defendant to Provide an Accessible Outdoor Dining Table

Plaintiff has standing to seek this injunction with respect to the barriers he personally encountered. In *Chapman v. Pier 1 Imports*, the Ninth Circuit held that an ADA plaintiff: (1) "must demonstrate that he has suffered an injury-in-fact," and (to obtain injunctive relief), (2)

---

[46] *Gonzales v. Police Dep't, City of San Jose, Cal.*, 901 F.2d 758, 762 (9th Cir. 1990).

[47] *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 109 (1998).

[48] *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1130 (C.D. Cal. 2005) (internal cites and quotes omitted for readability).

11

1 demonstrate a "real and immediate threat of repeated injury" in the
2 future.[49]

3    Under *Chapman*, an ADA plaintiff suffers an injury-in-fact when he
4 "encounters an accessibility barrier [that] interferes with the plaintiff's full
5 and equal enjoyment of the facility."[50] As referenced above, the Ninth
6 Circuit has held that the phrase "full and equal" is a term of art, having
7 specific reference to the Americans with Disabilities Act Accessibility
8 Guidelines ("ADAAG").[51] Thus, the *Chapman* court held that "the ADAAG
9 establishes the technical standards required for 'full and equal
10 enjoyment'" and that "if a barrier violating these standards relates to a
11 plaintiff's disability, it **will** impair the plaintiff's full and equal access" and
12 "constitutes 'discrimination' under the ADA."[52]

13    Here, Mr. Whitaker personally encountered the non-compliant
14 dining surfaces during his visit to the Restaurant and the lack of accessible
15 dining surfaces relates to his disability. As explained above, Plaintiff needs
16 an accessible dining surface with knee and toe clearance to accommodate
17 his wheelchair.[53] Thus, there can be no dispute that the plaintiff suffered
18 an injury in fact.

19    Second, a plaintiff must establish that there is ongoing injury or a real
20 likelihood of future injury.[54] It is axiomatic that if there is no ongoing or
21 likely future injury, then a plaintiff has no standing for injunctive relief.
22 *Chapman* firmly established that there are two ways to demonstrate such
23 standing: "Demonstrating an intent to return to a noncompliant

24 —————————————

25 [49] *Chapman,* supra, 631 F.3d at 946.
   [50] *Id.* at 947
26 [51] *Id.*
   [52] *Id.* (emphasis added).
27 [53] Pl. SUF #5-8.
28 [54] *Chapman*, supra, 631 F.3d at 946-47.

accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief. A disabled individual also suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there."[55] Additionally, the Ninth Circuit has "found actual or imminent injury sufficient to establish standing where a plaintiff demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible."[56]

Moreover, the Ninth Circuit has now held that ADA "testers"—folks actively looking for non-complying businesses—have full standing. In *Civ. Rights Educ.*, the Ninth Circuit had to grapple with the question of "whether a plaintiff has constitutional standing where her only motivation for visiting a facility is to test it for ADA compliance."[57] After a thorough analysis of the various circuits that have found that ADA plaintiffs have "tester" standing, the Ninth Circuit found "as a matter of first impression, a plaintiff suing under Title III of the ADA can claim tester standing; plaintiffs' status as testers, rather than bona fide hotel patrons, [does] not deprive them of standing." *Id.* at 1093. And the reason is simple: "motivation is irrelevant to the question of standing under Title III of the ADA."[58]

---

[55] *Chapman,* supra, 631 F.3d at 949.

[56] *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008).

[57] *Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.,* 867 F.3d 1093, 1096 (9th Cir. 2017).

[58] *Id.* at 1102; see also *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013).

Here, Mr. Whitaker is currently deterred from visiting the Restaurant because of his knowledge of the condition of the dining surfaces.[59] Hermosa Beach, where the Restaurant is located, is less than 30 minutes away from Mr. Whitaker's home and he visits the area regularly to eat and shop.[60]

Additionally, Mr. Whitaker considers himself an ADA advocate and has been very active in suing businesses that are violating his rights and violating the Americans with Disabilities Act. Because he is an active ADA litigator, his efforts to identify law-breaking businesses brings him to the geographical area where the Restaurant is located on a continuing and ongoing basis.[61] Therefore, once it has been represented to Mr. Whitaker that an accessible outdoor dining is provided, he intends to return to the Restaurant again to eat and to assess it for compliance with access laws.[62] And the fact that Plaintiff has an extensive litigation history and is a veteran tester supports his claim that he will return. Aside from the intent to return to the Restaurant to eat, the Plaintiff has an important *litigation* reason to return: to have standing. This is an entirely appropriate motivation.

Therefore, Plaintiff has standing to seek an injunction requiring Defendants to provide and maintain accessible dining surfaces at the Restaurant.

---

[59] Pl. SUF #15.
[60] Pl. SUF #14.
[61] Pl. SUF #17.
[62] Pl. SUF #16 & 18.

Opposition to Defense MSJ            **Case No**. 2:20-CV-01899-AB-AS

**B.**     **Plaintiff is Entitled to a Statutory Penalty Under the Unruh Civil Rights Act**

Statutory damages can be recovered for a violation of Unruh only if the violation "denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." Cal. Civ. Code § 55.56(a). The statute requires that plaintiff either personally encountered the violation or was deterred because of the violation. Cal. Civ. Code § 55.56(b).

*1.*     *Plaintiff Personally Encountered the Inaccessible Dining Tables*

First, if a plaintiff personally encountered the violation, then that personal encounter may be sufficient to establish a denial of full and equal access "if the plaintiff experienced difficulty, discomfort, or embarrassment because of the violation." Cal. Civ. Code § 55.56(b), (c). As outlined above, the thought of trying to use the inaccessible tables was discomforting for Mr. Whitaker because he knew that he would not be able to get close enough to the table to be able to use it. Mr. Whitaker did not want to embarrass himself trying to use these tables, so he decided to leave and eat elsewhere. This created difficulty for Mr. Whitaker because he had to leave the Restaurant.[63]

Notably, proving "difficulty, discomfort, or embarrassment" is just one way that a personal encounter with a violation can result in a denial of full and equal access. Cal. Civ. Code § 55.56(c). Although Mr. Whitaker easily satisfies that criteria here, proving difficulty, discomfort, or embarrassment is not necessarily required under the statute. The language

---

[63] Pl. SUF #5-8.

15

regarding "full and equal access" adopts by reference the same language under the ADA. As noted above, under the ADA, individuals shall not be discriminated against based on disability in the "full and equal enjoyment" of the goods, services and facilities offered by places of public accommodation. 42 U.S.C. § 12182(a). The Ninth Circuit has found that "[b]ecause the ADAAG establishes the technical standards required for **'full and equal enjoyment,'** if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's **full and equal access**, which constitutes 'discrimination' under the ADA." *Chapman v. Pier 1 Imports* (2011) 631 F.3d 939, 947 (emphasis added). Thus, even if the court finds disputed facts as to the difficulty and discomfort Mr. Whitaker experienced, the court can still find in Plaintiff's favor on this issue since there is no dispute that the dining surfaces did not comply with ADA standards on the date of Mr. Whitaker's visit. Because the dining surfaces did not comply with ADA standards, and because accessible dining surfaces relates to Mr. Whitaker's disability because he is a wheelchair user, the violation itself is sufficient to deny Plaintiff "full and equal access" to the facility.

### 2.     *Plaintiff Was Deterred from Accessing the Restaurant Because of the Violation*

Second, a plaintiff can also demonstrate a denial of full and equal access if a plaintiff was "deterred from accessing a place of public accommodation." A plaintiff proves he was deterred by demonstrating that:

> (1) The plaintiff had actual knowledge of a violation or
> violations that prevented or reasonably dissuaded the

Opposition to Defense MSJ            **Case No**. 2:20-CV-01899-AB-AS

plaintiff from accessing a place of public accommodation that the plaintiff intended to use on a particular occasion.

(2) The violation or violations would have actually denied the plaintiff full and equal access if the plaintiff had accessed the place of public accommodation on that particular occasion. Cal. Civ. Code § 55.56(d)(1)-(2).

Here, Mr. Whitaker was deterred from eating at the Restaurant once he saw the inaccessible dining tables. As outlined above, Mr. Whitaker needs accessible dining surfaces with the appropriate knee and toe clearance in order to comfortably use the table while in his wheelchair. Because the available dining tables were not suitable for eating, and any attempt to use them would cause embarrassment, Mr. Whitaker was dissuaded from eating at the Restaurant and he had to leave.[64]

Thus, there are no genuine issues in dispute here and the Plaintiff is entitled to the statutory award under the Unruh Civil Rights Act for his encounter with the barrier. "The litigant need not prove he suffered actual damages to recover the independent statutory damages of $4,000."[65]

## IX.   SERIAL LITIGATION IS NOT IMRPOPER

Finally, the defense arguments regarding the number of cases filed by plaintiff amount to nothing more than irrelevant and unprofessional personal attacks against Plaintiff and his counsel. The Ninth Circuit has repeatedly made clear that serial litigation is not improper. "As a result, most ADA suits are brought by a small number of private plaintiffs who

---

[64] Pl. SUF #5-8.

[65] *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007).

17

view themselves as champions of the disabled. For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA."[66] The Ninth Circuit further affirmed these principles in its ruling in *Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.*,[67] where the court specifically affirmed that the plaintiffs' status as testers did not deprive them of standing. The defense attacks should be ignored entirely as they have no legal significance as to the merits of the case.

## XI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny Defendant's motion and grant summary in Plaintiff's favor on his ADA and Unruh causes of action.

Dated: July 2, 2021          CENTER FOR DISABILITY ACCESS


                              By: */s/ Isabel Rose Masanque*
                                  Isabel Rose Masanque
                                  Attorneys for Plaintiff

---

[66] *Molski v. Evergreen Dynasty Corp.* I, 500 F.3d 1047, 1062 (9th Cir. 2007); *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008).
[67] *Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1096 (9th Cir. 2017),